OVERTON, J.
 

 This is a suit to recover back salary, amounting to $200 a month, from April 24, 1925, to April 15, 1927, and full salary for the remaining half of April, 1927, and $1,000 for the loss or destruction by defendant of some 36,000 index cards, containing the names of men and establishments of commercial prominence in Central and South America and the West Indies and data concerning them.
 

 Plaintiff was employed on April 25,1925, by H. K. Avery, the vice president and general manager of the defendant, orally, and the employment was later confirmed by a letter, written by Avery in his official capacity. The position that plaintiff was employed to fill was designated as director of the Latin-American department. 1-Iis contention is that he was employed by the month, at a salary of $400 a month, one-half of which was to be paid each month until the exhibition, to be conducted by defendant, was opened, when he would receive the remaining half of his salary, and thereafter the full salary, from month to month during his employment. It is also his contention that his salary was increased $50 a month on December 15, 1925,
 
 *638
 
 from which time he was paid $250 a month until he was discharged, the balance of each month’s salary remaining unpaid.
 

 Plaintiff has produced a letter, signed by H. K. Avery, as vice president and general manager, dated April 25, 1925, and addressed to him, confirming a verbal agreement between Avery and himself, in which it is said that plaintiff’s salary would be $200 a month until the opening of the exhibition, on which date it would be increased to $400 a month, “retroactive to date of employment.”
 

 Wallace, the president of the corporation at the time the contract was entered into, says he knew nothing of the additional salary or the retroactive clause in the agreement. Apparently, there is nothing in the books of the corporation to indicate, in any manner whatever, the existence of such a clause, including the agreement for an increase. The books, apparently, did not carry the additional salary as a contingent liability, or otherwise, up to the date of the opening of the exhibition. On February 1, 1926, the exhibition was opened, and under the retroactive clause, if that clause be a binding one, plaintiff was- then entitled to his back salary, and was thenceforth, under the terms of his alleged contract, entitled to the full salary of $400 or $450 a month. But no entry was apparently made, giving plaintiff credit therefor. The officials of the corporation, with the exception of Avery, who entered into the contract for the corporation, were utterly ignorant of the retroactive clause in the agreement, and of the provision for increased salary, and necessarily of the letter confirming the agreement. Although plaintiff was thrown constantly with the officers of defendant, he never once mentioned to them the provision as to increased salary, or the retroactive clause in the contract. When the exhibition opened, although plaintiff, under his contention, was then entitled to the back salary, as well as to the increase thenceforth, and although he continued to work for defendant for over a year thereafter, he never asked for any part of the back salary, or for any part of the increase, and apparently never sought to ascertain whether he was being given credit therefor, or complained that he was not, and never mentioned the arrearages in salary, or the increase, until he was discharged on April 15, 1927. The only reason given by him for not making mention thereof is that he did not feel called upon to do so. The only reason why he did not make demand therefor, during the course of his employment, after the back salary and the increase became due, was that defendant was not in position to pay. It does not appear why he did not ascertain during all of that time whether he was being given credit, as it matured, for the indebtedness here claimed.
 

 The contention of defendant is that Avery did not have the power to fix plaintiff’s salary, or to insért in the contract a retroactive clause. There is no contention that plaintiff is not entitled to the salary of $200 and later of $250 paid him. Defendant concedes that it had full knowledge of the salary in the sums named, and that it confirmed it in those amounts; but defendant disputes the additional salary claimed.
 

 To support the position that Avery had no right to fix plaintiff’s salary, or to insert in the contract a retroactive clause, defendant points to section 26 of the by-laws, which provides that the salaries of all officers and agents of the corporation shall be fixed by the board of directors. There is nothing in the charter in conflict with this provision. Oh the other hand, plaintiff contends that he had no knowledge of this by-law; that
 
 the
 
 general manager of a corporation, -by virtue of his position, has the implied right to em
 
 *640
 
 ploy agents and others for the corporation, and to fix and raise their salaries, and that he had the right to act on the apparent authority of that official, citing, among other authorities, 14a G. J., p. 94, § 1862. This doctrine, however, presupposes that the one employed by the general manager has no knowledge of limitations imposed upon the authority of that official, or is not by circumstances thrown upon inquiry. 14a C. J. p. 351, § 2213 ; p. 353, § 2214; Hunter v. Sun Mutual Ins. Co., 26 La. Ann. 13. We think that the circumstances, stated above, show that plaintiff, from the beginning, was in possession of facts sufficient to throw him upon inquiry, and hence his attitude in keeping matters so quiet, trusting that eventually they would shape themselves well for him.
 

 The case of Vredenburg v. International Trade Exhibition, 166 La. 390, 117 So. 437, in which the defendant here was the defendant there, is very similar to the present case. There, the' plaintiff sued for additional salary, alleged to have been earned under a verbal contract entered into with the president, containing a clause for additional salary, which, as here, was unknown to defendant. The cause of action was very similar to the one presented here; the chief difference being that the contract was made with the president instead of the general manager. The court, relying largely on the provision in the by-laws, mentioned above, relative to the fixing of salaries, decided the case in favor of defendant. We think that the case is almost decisive of the salary issue in the present case.
 

 The half month’s salary, sued for, from April 15, 1927, the date of plaintiff’s discharge, to May 1, 1927, is demanded upon the theory that plaintiff was employed by the month, and, as he was discharged without legal cause, that he is entitled to his salary to the end of the month. He would be entitled to it, on the basis of $250 a month, were it not for tbe fact that he signed an agreement with defendant, together with other employees, providing that any one of -the latter might leave the service when he saw proper and receive pay up to the time of leaving, and that defendant might discharge any one of them when it saw proper, on paying him up to the time of the discharge.
 

 Defendant, however, urges that this agreement is not valid. One of the grounds urged against its validity is that it is without consideration. This is incorrect. Here, both parties have surrendered rights. The surrender by one is the consideration for the surrender by the other. Another reason urged against the validity of the agreement is that plaintiff’s signature to it was obtained by duress. The duress relied upon by plaintiff is that his refusal to sign would mean his discharge. It may have been that, if plaintiff had refused to sign, he would have been discharged at the end of the month, or possibly then, and have been paid to the end of the month. However, that wouid not have been duress, for defendant had a legal right, without asking plaintiff to sign, to discharge him at the end of the month, or even then, without cause, had he paid him up to the end of the month. One is not guilty of duress merely because he exercises a legal right.
 

 As relates to the $1,000 claimed for' the loss or destruction of the index cards, we think that plaintiff is entitled to recover. The cards, with defendant’s consent, were taken to its building and kept in plaintiff’s office, or in close proximity thereto, for use in the Latin-American department. In relieving the floor, on which they were at the time, of supposedly unnecessary matter, the cards,
 
 *642
 
 at defendant’s instance, and without plaintiff’s knowledge, were taken to the third floor of the building and stored with some old papers and records. One day plaintiff needed the cards, but could not find them, and on making inquiry as to what had become of them, ascertained that they had been removed to the third floor of the building. They could not be found there. Defendant says that they were stolen by the elevator boy, together with papers and records belonging to it, disposed of as junk, and the money appropriated by the boy. We think that defendant was guilty of negligence in removing the cards to a place where, apparently, there was some likelihood of their being lost, destroyed, or possibly stolen, by some irresponsible employee. It does not clearly appear, throwing aside hearsay and conjecture, that the cards were stolen, but be that as it may, defendant should not have taken possession of them and removed them to a place where there was more likelihood, and certainly where there was some likelihood of their being destroyed or stolen by some irresponsible person. About nine-tenths of the cards have disappeared. They were worth fully $1,000. We think that plaintiff is entitled to recover that amount.
 

 The trial court rendered judgment in favor of plaintiff for $2,640, with legal interest thereon from judicial demand, thereby evidently allowing plaintiff a part of the salary claimed by him. The judgment must be amended.
 

 For the reasons assigned, the judgment appealed from is amended by reducing the principal amount thereof to $1,000, and, as thus amended, it is affirmed, plaintiff to pay the costs of appeal.
 

 O’NIELD, O. X, absent, takes no part.