PROVOSTY, J.
Plaintiff complains that, having been employed for a year, he was discharged without cause before the expiration of the year. He sues for the amount of the salary that would have accrued between the date of his discharge and the expiration of his contract.
Defendant’s first contention is that plaintiff’s employment was by the month. Plaintiff was elected secretary and treasurer of the D. H. Holmes Company, Limited. The duties of the office, were to attend to the finances of the company and see to its *87 'credits.' On the point of whether the salary was attached to the office of secretary and treasurer/ or was given for the service rendered, the only evidence in the record is the statement of plaintiff that,- “under the organization minutes, the salary was $4,000 as secretary and treasurer.” Plaintiff’s employment was therefore unquestionably by the year, and not by the -month. Defendant’s next contention is that, -if plaintiff had a contract by the year, he renounced it. Plain-! tiff’s contract was for the year 1905. I-Ie had been filling the position since ‘1901. Shortly after his election for 1905, he obtained an increase of salary to $6,000. Already at the • time of this increase Mr. Holmes, the president of the D. H. Holmes Company, Limited, and his sister, the principal stockholders of the company, were negotiating ■ with “some gentlemen with whom they eventually came to terms” for the organization of a new corporation to take over the property and business of the D. H. Holmes Company, Limited.- Plaintiff was one. of the stockholders of the company, and was cognizant of these negotiations; in fact, was taking part and aiding in them. At the time of granting him the increase of salary Mr..Holmes took occasion to say to him:
“Yes; I think you are worth more money, and I will raise you to $6,000, and, when the reorganization takes place, they will probably take you at my valuation, and make no question.”
Negotiations dragged, .but by April 26, 1905, all had been perfected, and on that day the transfer from the old to the new company was made; the name of the new company being the same as the old, D. H. Holmes Company, Limited. The amount of stock held by plaintiff in the old company was $5,000. In the new company he was allotted $15,000. At the time the negotiations for the organization of a new company began the old company was undergoing some kind of liquidation, and plaintiff was one of the liquidators. As'such’he voted for the transfer to the new company. Assurances were given him on several occasions that he need not fear; that he would not be disturbed; that everything would be all right. This was by one of the gentlemen with whom the old company was negotiating. The condition upon which the transfer was made was that the new company took all the property and assumed all the obligations of the old — stepped into its shoes. And, accordingly the transfer brought no interruption in the business, but the employés of the old company, including plaintiff, went on .with their work as theretofore. Not a word was said to or by plaintiff about any change in his contract. The office of secretary and treasurer which he had occupied in the old company was not, however, perpetuated in the new, and hence, while he performed the same duties in the new as in the old, he did not do so under the same title, but merely as an ordinary employs. The directors of the new company called upon plaintiff for a list of the salaried employés who were earning as much as $1,000 per annum and more. Plaintiff says that this was either on the day of the transfer, April 26, 1905, or a day or two afterwards. The director to whom the list was furnished says it was before the transfer. On this list plaintiff put himself down as receiving a salary of $6,000 per an-num. No objection was made to this list, and no question was raised in connection with plaintiff’s employment, until July 6, 1905; plaintiff in the meantime continuing to discharge the duties under his contract. On that day plaintiff was called before the meeting of the directors of the new company, and was asked whether at the time Mr. Holmes had raised his salary he had given him a contract. Plaintiff understood the question to be whether Mr. Holmes had given him a written contract, and, as no writ-. *89 mg had' been executed between him and Mr. Holmes, he answered the question in the negative. The directors intended by said question to ascertain of plaintiff whether he had a contract by the year, and they understood him as answering that he did not have a contract by the year. And on the same day, for some reason not explained, but not urged in the suit as good cause for discharge, they instructed their manager ■ to call for plaintiff’s resignation, and to discharge plaintiff in ease he refused to resign. The manager proceeded on the same day to carry out the instructions by calling upon plaintiff to resign, at the same time tendering him $500 as the salary due him for the then current month of July. Plaintiff refused to accept the tender or to resign, and informed the manager that the only alternative of the company, if it desired to put an end to his employment, was .to discharge him. Thereupon the manager told plaintiff that he could consider himself as discharged, and to turn over his books and papers to his successor, who was present at the interview. The learned counsel for defendant argue that by acquiescing and taking part in the negotiations by which the transfer was made, and, indeed, benefiting thereby to the extent of $10,000 of increased stock, plaintiff impliedly consented to the abolition of the office which he held and to the consequent abolition of whatever contract might have resulted from his election to that office. That view of the matter does not impress us. The rule is that the officer of a private corporation elected for a fixed term cannot be removed arbitrarily during the term for which he has been elected. 21 A. & E. E. 850. The reason is that his relations with the corporation are those of employer and employe precisely as would be the case if he were the employé of an ordinary person. The election to the office constitutes a contract, and the corporation is not at liberty to put an end to the contract at its pleasure. Indeed, the-defendant does not contend that plaintiff did not have a contract with the old company,, but merely that the contract was by the month. The question, therefore, is not as to whether plaintiff had or not a contract, but as to whether he consented to renounce his. contract. True, where the officer of a -private corporation assents to and co-operates in the transfer of all the property and business of the corporation to another corporation,' so-that there no lofiger remain any duties to be performed by him, he is presumed to have renounced the salary attached to the office (Long Island Ferry Co. v. Terbell, 48 N. Y. 427); but that is because, by consenting to the termination of the duties, he presumably consents, also, to the termination of the salary payable for the performance of the duties. That reason has no operation in a case where, as in the case at bar, the duties continue to be performed. That the title under which they are performed is changed should not make any difference, since the salary is paid for performing the duties, and not for wearing the' title. Absolutely nothing was changed in the situation of xflaintiff, except that he ceased to have the title of secretary and treasurer. We think the new company accepted and assumed the obligations of the old company exactly as they were, and that one of the obligations was this contract with, plaintiff for the year 1905. We do not think that plaintiff should be understood to have waived his contract because he consented to a change which deprived him of the mere title under which he had theretofore performed the duties under his contract. The tender made to plaintiff on the 6th of the month of the salary for the entire month was an express recognition of the existence of a contract, and the only contract that could possibly have existed between them was the contract which had existed between plaintiff and the- *91 old company, and which the new company had assumed along with all the other obligations of the old company. And that contract we have found hereinabove to have been unquestionably by the year. Indeed, so evidently, upon the evidence, was plaintiff’s contract with the old company by the year, and so evidently had it been assumed by the new company, that in the lower court we are informed in argument the defendant’s contention was not that plaintiff did not have a contract by the year, but that, by misinforming the directors of the defendant company on that point when questioned in that regard at the meeting of the directors, he had estopped himself from the right to set up such a contract. This defense of estoppel is not now pressed, and hence we will dispose of it summarily by saying that manifestly the plaintiff meant that he had no written contract; and that, if the directors understood him differently, it was their misfortune, and not his fault. The perfect, good faith of the directors in the matter cannot be doubted; but the fact remains that plaintiff had a contract by the year, and that he was discharged without cause. It may be well to add that the $10,000 additional stock allotted to plaintiff was simply an ordinary subscription by him to the stock of the new company.
Defendant’s second contention is that plaintiff cannot recover because he did not put the defendant in default. Even if the present suit were purely upon the contract of employment, we would not think that plaintiff was under the necessity of making any further tender than he did. He insisted upon continuing to discharge the duties of the position, and in the most positive terms informed the defendant company, through its manager, that the only alternative for preventing him from doing so was to discharge him. After this, if there was to be any renewal of negotiations between the parties, the duty of making'the first move lay with defendant. But this suit is not purely upon the contract of employment, but also upon a special statute (article 2749, Civ. Code), the settled jurisprudence under which is that this right of action accrues immediately upon the discharge, and by the fact of the discharge — so much so that the employ® is free, from that moment, to employ his time elsewhere without detriment to his suit. Curtis v. Lehmann, 115 La. 40, 38 South. 887. Of course, if plaintiff had been aware that the directors had been misled by his answer ■to their question, a different case might be presented; but, so far as plaintiff knew, the defendant company when it discharged him was fully advised that it had with him a contract by the year. Plaintiff’s refusal to accept a one month’s salary — that is to say, his refusal to admit that his employment was by the month — and his refusal to resign, could mean nothing else than that he understood that he had a contract by the year, and this should have put the company upon inquiry before discharging him arbitrarily as to what was the true situation, and as to whether there had not been some misunderstanding. •
Judgment affirmed.
LAND, J. I take no part, not having been present at the argument.